**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV267-1-V
5:99CR11-14-V**

| | | |
|---|---|---|
| **CARLOS ANDREAS PARKS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court upon Petitioner's Motion to Vacate, Set

Aside, or Correct Sentence (Doc. No. 1), filed October 25, 2005; a Motion to Intervene[1] by

Aaron Michel (Doc. No. 5), filed December 15, 2005; Respondent's Motion for Summary

Judgment (Doc. No. 9), filed January 30, 2006; Petitioner's Motion for Discovery (Doc. No.

13), filed March 29, 2006; and Petitioner's Motion for Summary Judgment (Doc. No. 19),

filed May 1, 2006.

For the reasons set forth below, Respondent's Motion for Summary Judgment is

granted in part and denied in part; Petitioner's Motion for Summary Judgment is granted

in part and denied in part; Petitioner's Motion for Discovery is denied; and Petitioner's

Motion to Vacate, Set Aside, or Correct Sentence is granted in part and dismissed in part.

---

[1] The Government responded to Petitioner's Motion to Vacate and included Mr.
Michel's affidavit as an exhibit. It has been considered by the Court. Consequently,
there is no need for Mr. Michel to separately intervene in this matter. Mr. Michel's
Motion to Intervene is therefore denied as moot.

## PROCEDURAL HISTORY

Petitioner was one of fifteen individuals indicted by a federal grand jury for conspiracy to possess with the intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 846. Petitioner was also indicted for possession with intent to distribute cocaine base and aiding and abetting that possession in violation of 21 U.S.C. §§ 841, 2. On March 2, 1999, the Government filed an Information pursuant to 21 U.S.C. § 841(b) notifying Petitioner that the conspiracy charged in Count One involved more than 1.5 kilograms of cocaine base and that the possession with intent to distribute charge in Count Two involved more than 50 grams of cocaine base.

On April 27, 1999, Petitioner filed a Motion to Suppress his statements to law enforcement. After a hearing on the matter, on May 28, 1999, Magistrate Judge McKnight entered a memorandum and opinion recommending the denial of Petitioner's Motion to Suppress. On June 10, 1999, Petitioner filed a second Motion to Suppress. Judge McKnight conducted another suppression hearing and on June 21, 1999, entered a memorandum and opinion recommending the denial of Petitioner's second Motion to Suppress.[2]

On June 30, 1999, Petitioner entered a "straight-up" plea of guilty to Count One of the Indictment. The Government later moved to dismiss Count Two of the Indictment. On July 25, 2000, this Court sentenced Petitioner to 360[3] months

---

[2] Ultimately, Petitioner withdrew his two suppression motions at the sentencing hearing. (Sent. Hearing Tr. 13.)

[3] On December 22, 2008, Petitioner filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582. On March 17, 2009, this Court granted Petitioner's motion and reduced his sentence to 324 months imprisonment.

imprisonment and five years of supervised release.  Judgment was entered on July 27, 2000.

On July 23, 2001, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence alleging, among other things that his counsel was ineffective for failing to fully consult with him about an appeal.  On October 30, 2003, this Court entered an order dismissing Petitioner's claims without prejudice except for his claim of ineffective assistance of counsel based upon his counsel's failure to fully consult about an appeal, which claim was granted.[4]  This Court then vacated its July 27, 2000, Judgment and on November 17, 2003, entered an Amended Judgment from which Petitioner could, and did, directly appeal.

On or about February 12, 2004, Petitioner's appellate counsel filed an Anders[5] brief with the United States Court of Appeals for the Fourth Circuit requesting that the Fourth Circuit review the case for legal error as counsel identified no cognizable error. Petitioner filed a pro se supplemental appellate brief arguing that the district court erred in enhancing his sentence based upon his role in the offense and for possession of a firearm.  On October 29, 2004, the Fourth Circuit, using a plain error standard of review,

_____

[4] After reviewing Petitioner's first Motion to Vacate, this Court granted Petitioner's claim that trial counsel failed to fully consult with him regarding the filing of an appeal.  More specifically, this Court concluded that a miscommunication between Petitioner and trial counsel occurred regarding the filing of an appeal.  In accordance with this Court's practice when such a situation arises, this Court granted Petitioner's ineffective assistance of counsel claim.  The Court notes that Petitioner's habeas counsel inaccurately quotes Petitioner as stating at the end of his sentencing hearing that he "can't wait" to appeal.  (Mot. to Vac. 7.)  In actuality, when asked by the Court if he wished to indicate at that time whether or not he wanted to appeal, Petitioner responded "I can wait."  (Sent. Hearing Tr. 123.)

[5] Anders v. California, 386 U.S. 738 (1967).

affirmed the judgment against Petitioner in an unpublished decision specifically holding that the district court did not commit reversible error under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), in sentencing Petitioner based upon a drug quantity of 1.5 kilograms of cocaine base or err in denying Petitioner's motion for a downward departure. <u>United States v. Parks</u>, 113 Fed. App'x 508, 509-10 (2004). Additionally, the Fourth Circuit held, in response to Petitioner's <u>pro se</u> supplemental brief, that the district court did not err in enhancing Petitioner's sentence based upon his role in the offense and his possession of a firearm. <u>Id.</u> at 510.

On October 25, 2005, Petitioner filed the instant Motion to Vacate. In his Motion to Vacate, Petitioner alleges that his trial and appellate counsel's representation of him was ineffective. In particular, Petitioner alleges that trial counsel's performance was deficient in his failure to advise Petitioner of a pre-arraignment written plea offer and his decision instead to file two motions to suppress. Petitioner asserts that counsel should have known that the motions to suppress, which resulted in the withdrawal of the plea offer, would be futile. Petitioner also asserts that his counsel was ineffective for erroneously informing him that the quantity of drugs attributable to him made no difference in his sentence exposure. Petitioner also alleges that his trial counsel erroneously represented that Petitioner was withdrawing any objection to the factual basis for Petitioner's possession of a firearm enhancement. Finally, Petitioner asserts that his appellate counsel was ineffective for electing not to challenge the drug quantity attributed to Petitioner.

## <u>ANALYSIS</u>

Petitioner's contentions that he received ineffective assistance of counsel are

governed by the holding in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In

<u>Strickland</u>, the Supreme Court held that in order to succeed on an ineffective

assistance of counsel claim, a petitioner must establish that counsel's performance was

constitutionally defective to the extent it fell below an objective standard of

reasonableness, and that he was prejudiced thereby, which is to say that there is a

reasonable probability that but for the error, the outcome would have been different.  In

making this determination, there is a strong presumption that counsel's conduct was

within the wide range of reasonable professional assistance.  <u>Id.</u> at 689; <u>Fields v.

Attorney General of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865

(1995).  Petitioner bears the burden of proving <u>Strickland</u> prejudice.  <u>Fields</u>, 956 F.2d at

1297.  If the petitioner fails to meet this burden, a "reviewing court need not consider

the performance prong."  <u>Id.</u> at 1290.

Moreover, a petitioner who alleges ineffective assistance of counsel following the

entry of a guilty plea has an even higher burden to meet.  <u>Hill v. Lockhart</u>, 474 U.S. 52,

53-59 (1985).  When a petitioner challenges a conviction entered after a guilty plea, in

order to establish the requisite prejudice, such a petitioner must show that "there is a

reasonable probability that but for counsel's errors he would not have pleaded guilty

and would have insisted on going to trial."  <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4[th]

Cir. ), <u>cert. denied</u>, 488 U.S. 843 (1988).  Claims of ineffective assistance of counsel at

sentencing after a guilty plea, however, require a petitioner to establish that a

reasonable probability exists that absent the alleged error, the results of the proceeding

would have been different.  <u>United States v. Mayfield</u>, 320 Fed. App'x 190, 191 (4th Cir.

2009).

5

## A. <u>Sentencing</u>

Petitioner alleges that he received ineffective assistance of counsel at his

sentencing hearing.  More specifically, Petitioner alleges that his counsel failed to

understand the importance of the fact that his Indictment did not set forth a specific

drug amount.  (Mot. to Vac. 6, 14; Pet. Answ. Opposing Gov't Mot. Summ. J. 7,17.)

Petitioner asserts that because his counsel did not challenge the drug amount he was

sentenced to a term of imprisonment in excess of the twenty year maximum sentence

to which his Indictment exposed him.  (Mot. to Vac. 33)   As a result of his counsel's

deficient performance, Petitioner asserts he was sentenced in contravention of

<u>Apprendi v. New Jersey</u> 530 U.S. 466 (2000).  (Mot. to Vac. 3; Pet. Answ. Opposing

Gov't Mot. Summ. J. 6 and n.6.)  Petitioner also asserts that he did not authorize the

withdrawal of the objection to the drug amount.  (Mot to Vac. 17; Pet. Answ. Opposing

Gov't Mot. Summ. J. 20.)  In addition, Petitioner alleges that, in general, his counsel

lacked familiarity with the United States Sentencing Guidelines and with his pre-

sentence report.[6]

---

[6] At his sentencing hearing, Petitioner stated under oath that he had received an adequate opportunity to go over his presentence report with his trial counsel. (Sent. Hearing Tr. 6.)  Petitioner further stated that he had indeed gone over the presentence report in detail with his trial counsel.  (Sent. Hearing Tr. 6-7.)  Moreover, trial counsel successfully argued against the application of an obstruction of justice enhancement and for an acceptance of responsibility reduction.  (Sent. Hearing Tr. 120.) Notwithstanding Petitioner's assertions to the contrary, the decision not to fight various enhancements does not, by itself, indicate a lack of familiarity with the guidelines. Significantly, Petitioner does not present any substantive argument as to why he should not have been given a gun enhancement or a role enhancement.  As such, this Court finds that based upon the record and this Court's recollection of the proceedings, that Petitioner's counsel did not lack a general familiarity with the sentencing guidelines or with Petitioner's presentence report.

Petitioner's main ineffective assistance of counsel claim with regard to sentencing is that his counsel failed to object to a drug amount that was not specifically charged in the Indictment. Petitioner asserts that as a result of his counsel's deficient performance he was sentenced to a greater term of imprisonment than he should have received pursuant to the terms of his Indictment. Furthermore, Petitioner asserts that his counsel withdrew the objection[7] to drug quantity without explaining the impact of such a decision and without Petitioner's permission to do so.

In response to Petitioner's claim, the Government argues that trial counsel was not ineffective because the Government had the evidence to prove the alleged drug amount and because trial counsel withdrew the objection for strategic reasons. Petitioner's trial counsel asserts in his affidavit that based upon his "review of the evidence, interview of witnesses, and discussions with [Petitioner]" he did not object to the drug amount because "the evidence suggested that the government would be able to establish that the amount of crack reasonable attributed to [Petitioner] in the conspiracy was in excess of 1.5 kilograms." (Michel Aff. ¶¶ 169-70). Petitioner's counsel also noted that withdrawing an objection that he did not think would prevail allowed Petitioner to protect himself against other federal conspiracy charges by

---

[7] A review of the objection to the drug amount reveals that it was, as stated by trial counsel in his habeas affidavit, more of a clarification than an objection. That is, the "objection" does not take issue with the amount of drugs but rather with the geographic scope – counsel wished to clarify that more of the drug activity occurred outside of Hickory. (Def. Obj. No. 1 to Presentence Rep.; Michel Aff. ¶ 170.) Petitioner asserts in his habeas affidavit that "I objected to the quantity of cocaine because I did not feel that I was involved with the quantity attributable to me in the Grand Jury Indictment or the Supplemental Bill of Information." (Parks Aff. ¶ 9.)

making the present conspiracy as broad as possible[8] and allowed him to curry favor

with the Court[9] in order to maximize Petitioner's chances of avoiding an enhancement

for perjury and maximize his value as a government witness under a hoped for future

Rule 35 motion.  (Michel Aff. ¶ 170.)

It is undisputed that Petitioner's Indictment did not contain a specific drug

amount.  As such, after the decision in Apprendi,[10] Petitioner's maximum statutory

sentence, based upon his Indictment, was twenty years.  Apprendi v. New Jersey, 530

U.S. 466 (2000)( "other than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury, and proved beyond a reasonable doubt." ); 21 U.S.C. § 841(b)(1)(C).

Consequently, Petitioner's counsel's failure to raise an Apprendi objection[11] to the

finding of the drug amount by a preponderance of the evidence prejudiced Petitioner.[12]

---

[8] Trial counsel's current assertion is supported by contemporaneous court records.  In a letter to the federal prosecutor dated June 23, 1999, trial counsel set forth that Petitioner was willing to plead guilty to count one of the Indictment "as long as it encompasses all of his drug related activities during the conspiracy including his activities in Virginia."  (5:99CR11; Doc. No. 244, Ex. E.)

[9] In overruling the Government's objection and granting Petitioner a two-point reduction for acceptance of responsibility, this Court specifically cited to Petitioner's decision to not contest the drug amount as a basis for its decision.  (Sent. Hearing Tr. 121.)

[10] The Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000) was decided after Petitioner pled guilty but one month before he was sentenced.

[11] A failure to object by counsel differs significantly from an affirmative admission by a defendant.  Cf. United States v. Milam, 443 F.3d 382, 387 (4th Cir. 2006).

[12] The Court notes that the Apprendi decision initially caused a significant upheaval in the federal sentencing of drug cases.  Not surprisingly, defense counsel, prosecutors, and trial courts scrambled to determine the precise impact of the Apprendi

Had Petitioner's counsel objected, this Court would have, in all likelihood, sentenced Petitioner to twenty years of imprisonment. However, even if this Court had not upheld the objection, an objection by counsel would have changed the Fourth Circuit's standard of review and likely would have resulted in the reversal and remand of Petitioner' sentence.[13] Indeed, the Government conceded on appeal that Petitioner's "sentence was erroneous because the indictment failed to include an allegation related to drug quantity." United States v. Parks, 113 Fed. App'x 508, 509 (4th Cir. 2004).

The Government misses the mark with its argument that the withdrawal of the objection to drug amount was not ineffective assistance because the Government had the evidence to establish that Petitioner was indeed responsible for greater than 1.5 kilograms of cocaine base. Indeed, this argument fails to take into account the fact that no matter what evidence the Government might have presented at the sentencing hearing, the fact would remain that such evidence had not been found by a jury beyond a reasonable doubt. Consequently, such evidence could not have served in any event to elevate Petitioner's statutory maximum sentence of twenty years.

The Government also argues that withdrawing the objection to the drug amount was a strategic move by counsel. No strategy, however, would appear reasonable in

---

decision on sentencing in pending drug cases.

[13] On appeal the Fourth Circuit denied Petitioner's Apprendi claim. Because Petitioner had not objected to the enhanced sentence based upon a drug amount not specified in the Indictment, the court of appeals used a plain error standard of review. In denying the claim, the Fourth Circuit recognized that a plain error had occurred but found that the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. United States v. Parks, 113 Fed. App'x 508, 509-10 (4th Cir. 2004).

light of the fact that by withdrawing any objection to the drug amount, counsel automatically increased Petitioner's sentence 120 months beyond that to which he was otherwise exposed.  A tactic designed to bring about the acceptance of responsibility reduction or remove the application of an obstruction of justice enhancement could not have had an impact comparable to that of objecting to drug quantity based upon a proper reading of Apprendi.

Exactly how the error here identified – defense counsel's lack of awareness of Apprendi's ultimate impact – might have affected the discussions between counsel, the prospects of a future Rule 35 request, or the appearance of co-operativeness by Petitioner as presented to the Court, can only be a matter of speculation at this point. But the glaring reality which transcends such speculation is that, after Apprendi, defense counsel had an incontrovertibly powerful hand to play – namely a twenty year maximum sentence, a cap – but did not know it and did not play it.  The result was catastrophic for Petitioner – a 360 month sentence which could have been even higher had the sentencing court so ruled.

The reasoning of the undersigned is correctly reflected by the recitations contained in the body of this opinion thus far, and justifies relief in the form of vacating the sentencing judgment and the re-sentencing of defendant in an environment where the Apprendi-limited maximum sentence of 240 months is recognized.  However, the question must be addressed whether the law of the case presents an insuperable obstacle to such a step.  In its opinion resulting from Petitioner's direct appeal, the Fourth Circuit appears to have held that Petitioner's actions relative to the determination of drug quantity at sentencing constituted a stipulation by him that 1.5 kilograms of

crack cocaine should be attributed to him for purposes of sentencing.[14]  This holding is

binding on this Court in the context in which it was issued, but it was not rendered in the

context of a challenge by Petitioner addressing alleged constitutionally infirm assistance

from counsel.  For that reason, it does not  present an insurmountable obstacle to relief

on Petitioner's instant claim, particularly in the light of indications in the record that the

question of quantity was decided by withdrawal of objection as to quantity of drugs[15]

rather than a stipulation as such.  Moreover, even if the Petitioner's acquiescence in the

withdrawal of the objection is characterized as  a stipulation by his counsel on his

behalf, the disastrous effects on Petitioner's posture at sentencing remain, and

constitute ineffective assistance of counsel.

Petitioner's claim of ineffective assistance of counsel based upon his trial

counsel's lack of awareness of <u>Apprendi</u>'s ultimate impact is granted.

### B. <u>Plea Advice</u>

Petitioner also alleges that his counsel was ineffective because he failed to

inform him about a written plea offer by the Government and instead encouraged him to

file two meritless motions to suppress which resulted in the written plea offer being

withdrawn.  Petitioner further alleges that he received "grossly inaccurate legal advice"

---

[14] "In this case, Parks stipulated to the relevant drug quantities at sentencing, so there was independent and uncontroverted evidence establishing the threshold drug quantity to support an enhanced sentence."  <u>United States v. Parks</u>, 113 Fed. App'x 508, 509-10 (2004).

[15] As stated earlier, the objection to the drug amount was, as stated by trial counsel in his habeas affidavit, more of a clarification than an objection.  That is, the "objection" does not take issue with the amount of drugs but rather with the geographic scope – counsel wished to clarify that more of the drug activity occurred outside of Hickory.  (Def. Obj. No. 1 to Presentence Rep.; Michel Aff. ¶ 170.)

which resulted in his entering a straight-up guilty plea on the eve of trial and receiving a 360 month sentence rather than accepting the earlier written plea bargain and receiving a lower sentence.[16]

Petitioner alleges that his counsel failed to communicate to him the existence of a written plea offer by the Government. Indeed, Petitioner asserts that he did not learn of the existence of such an offer until he was informed of it by his habeas counsel.[17] (Pet. Mot. to Vac. 2-3; Parks Aff. ¶ 3.) In response, Petitioner's trial counsel asserts that he did communicate the Government's plea offer to Petitioner. (Michel Aff. ¶ 16.) Indeed, Petitioner's trial counsel states in his affidavit that although he encouraged Petitioner to accept the proffered plea agreement, Petitioner wanted to challenge the confession and insisted on moving to suppress his confession. (Michel Aff. ¶¶ 24, 26.)

It is uncontroverted on the record that a written plea agreement was offered to Petitioner through his counsel. Indeed, a copy of this proffered plea agreement was

_____

[16] Petitioner never specifically explains why Petitioner's sentence would have been lower pursuant to the proffered plea agreement. Rather, Petitioner merely conclusorily asserts that it "had to mean less prison confinement." (Mot. to Vac. 30; Pet. Answ. Opp. Govt. Mot. Summ. J. 20, 29) and Petitioner "was far worse off pleading 'straight up' than he would have been if he had accepted the pre-arraignment plea offer," (Mot. to Vac. 22) and "trial counsel . . . lost the opportunity for a written plea agreement ensuring far less imprisonment exposure." (Mot. to Vac. 19.) As outlined in the text of this Order, this Court has concluded that Petitioner's sentence would not have been lower if he had accepted the proffered plea.

[17] Trial counsel specifically referenced the proffered plea agreement in Petitioner's presence at the Rule 11 hearing. (Plea Hearing Tr. 6.) Such a reference in open court combined with trial counsel's filing in the criminal case of the proffered plea agreement and letters referencing it as exhibits, (Def. Resp. to Govt. Obj. and Mot. Downward Dep., Ex. B), hardly is the action of an attorney attempting to keep a plea proffer a secret. In light of this reference, Petitioner's protestations of ignorance are disingenuous at best.

filed by trial counsel as an attachment to Defendant's Response to Government's Objection and Defendant's Motion for Downward Departure.[18] (3:99CR11-14; Doc. No. 224.) This plea agreement, among other things, sets forth that Petitioner would plead guilty to Count One of the Indictment. The plea agreement also contained a clause that Petitioner would admit to being responsible for in excess of 1.5 kilograms of cocaine base. Furthermore, the plea agreement contained a stipulation to a two-level enhancement for possession of a firearm. The agreement also stipulated that provided Petitioner revealed the nature and extent of all relevant criminal conduct, the United States would recommend a two-level reduction for acceptance of responsibility with the possibility of an additional one-level acceptance of responsibility reduction.

Petitioner cannot prevail on his ineffective assistance of counsel claim on this basis because, at a minimum, Petitioner cannot establish that he was prejudiced. Significantly, Petitioner never states in his affidavit or in his filings that had he known of the plea agreement offer he would have accepted it. As such, Petitioner has not

---

[18] It puzzles the Court why Petitioner's habeas counsel asserts that neither he nor Petitioner has ever seen a copy of the proffered plea agreement. (Mot. to Vac. 10; Pet. Answ. Opp. Govt. Summ. J. Mot. 13.) A copy of this plea agreement has been part of the public record since it was filed as an exhibit to Defendant's Response to Government's Objection and Defendant's Motion for Downward Departure on February 29, 2000. In fact, Petitioner's habeas counsel references this very document which in the text indicates that the proffered plea agreement is attached as an exhibit. (Mot. to Vac. 5, 21-22.) Likewise, Petitioner's counsel complains that he has never received the complete file. (Pet. Answ. Opposing Gov't Mot. Summ. J. 2, n.2.) Again, the official file is available to the public at the Court. To the extent counsel is complaining that trial counsel did not automatically send his time sheets to others, (Id. at 1-2), this Court finds such expectation unreasonable. This Court sees no reasonable basis for an appellate counsel to expect to receive such documents as a matter of course. Moreover, Petitioner's trial counsel obviously provided these documents early on in the collateral review process.

established that he was prejudiced by his alleged lack of knowledge of the existence of the offer.

Moreover, even if Petitioner had asserted that he would have accepted the offered plea agreement, he still cannot establish that he was prejudiced. That is, as set forth below, Petitioner was exposed to the same sentencing range after entering a straight-up guilty plea as he would have faced pursuant to the proffered plea agreement. Based upon Petitioner's withdrawal of his objection to a drug amount of greater than 1.5 kilograms of cocaine base, Petitioner's base offense level was determined to be 38. Two points were added pursuant to § 2D1.1(b)(1) for a possession of a firearm enhancement. Another two points were added pursuant to § 3B1.1(c) for his role in the offense. Petitioner was granted a two-point reduction for acceptance of responsibility. Consequently, after pleading guilty without the benefit of a plea agreement, the Court determined that Petitioner's sentencing range was 360 months to life[19] based upon an offense level of 40 and a level IV criminal history category.[20]

---

[19] As noted earlier in the text of the Order, pursuant to the holding in Apprendi, Petitioner, with a straight up plea should have been exposed only to a maximum sentence of twenty years. Such sentence would have been significantly lower than the sentence Petitioner would have received had he signed the proffered plea agreement.

[20] Petitioner asserts in his Motion to Vacate that his sentence was increased pursuant to 21 U.S.C. § 851. (Mot. to Vac. 1, 6; Pet. Answ. Opp. Govt. Summ. J. Mot. 7, 12.) While some confusion obviously existed at the plea hearing over whether a § 851 notice had been filed, the record supports the conclusion that no such notice was filed. While Petitioner's habeas counsel asserts that "an aggravated U.S.S.G. penalty imposed under 21 U.S.C. § 851 enhanced Parks' mandatory minimum to 360 months," (Pet. Answ. Opp. Govt. Summ. J. Mot. 4), and the quantity of drugs "trigger[ed] the aggravated U.S.S.G. penalty imposed under 21 U.S.C. § 851 . . . ." (Id. 12), such statements are awry. A review of the record makes it clear that the Court did not

According to the terms of the plea agreement offered by the Government, Petitioner would agree to being responsible for greater than 1.5 kilograms of cocaine base. As such, his base offense level would have been 38. The plea agreement also specifically set forth that Petitioner would agree to a two level enhancement for possession of a firearm. Petitioner does not present any argument, and this Court cannot envision one, to support a conclusion that had Petitioner pled guilty pursuant to the proffered plea agreement he would not have received a two point enhancement for his role in the offense.[21] Indeed, Petitioner agreed at sentencing to withdraw his objection to this enhancement. (Sent Hearing Tr. 12-13.) Had he accepted the written plea agreement Petitioner would certainly have received a two point reduction for acceptance of responsibility. For the sake of this analysis, this Court will assume that Petitioner would have received an additional one point reduction for acceptance of responsibility. To sum up, had Petitioner accepted the Government's initial written plea agreement he would have been sentenced based upon an offense level of 39 and a criminal history category of IV and he still would have faced a minimum sentence of 360 months imprisonment and a maximum sentence of life imprisonment.

---

sentence Petitioner based upon a belief that a § 851 notice had been filed. (Gov't Mot. Summ. J., Ex. 8, 16.; Sent. Hearing Tr.) As such, regardless of any confusion over this issue, Petitioner's sentence was not increased pursuant to 21 U.S.C. § 851.

[21] The proffered plea agreement, on the other hand, did not specify that an enhancement for role in the offense would be sought. The proffered plea agreement did contain the typical language that " [t]he defendant is aware that if the Probation Office determines that a different offense level or a Guideline not addressed in this agreement applies, and the Court finds that the Probation Office is correct, the Court will use that offense level in determining the sentence." (Def. Resp. to Govt. Obj. and Mot. Downward Dep., Ex. B.)

In conclusion, because Petitioner does not assert that he would have accepted the proffered plea if he had been told of its existence, he has not established that he was prejudiced by his counsel's alleged failure to inform him of the Government's offer. Moreover, even if Petitioner had claimed that he would have accepted the proffered plea agreement, he still cannot establish that he was prejudiced. That is, Petitioner was exposed to the same sentencing range as a result of his straight-up guilty plea as he would have faced if he had accepted the Government's written plea offer.

Petitioner also alleges his counsel was ineffective for pursuing two motions to suppress. Petitioner asserts that these motions were "unnecessary" and resulted in the withdrawal of the proffered plea agreement. (Parks Aff. ¶ 3.) Petitioner asserts that his trial counsel convinced him that he would prevail on these motions and that they were necessary to prevail at trial. (Parks Aff. ¶ 4.)

Trial counsel asserts in his affidavit that he recommended to Petitioner that his best course of action would be to accept the plea agreement and to earn a downward departure motion. (Michel Aff. ¶ 20.) Nevertheless, according to trial counsel, Petitioner insisted that he wanted to challenge his confession. (Michel Aff. ¶¶ 24-26.)

As an initial matter the Court notes that Petitioner's own words do not support his contention that the motions to suppress were unnecessary and that trial counsel persuaded him that they must be filed. During Petitioner's allocution at his sentencing hearing he stated, without prompting, that "I really wanted to suppress that evidence to clarify a couple of names." (Sent. Hearing Tr. 117.) Such a statement does not

comport with his present assertions.[22]

Moreover, Petitioner again fails to establish that he was prejudiced. As already discussed above, any claim by Petitioner that he was prejudiced because the filing of these motions resulted in the withdrawal of the proffered plea agreement is meritless because he ultimately received the same sentence he would have received pursuant to the proffered plea agreement. Moreover, although the Government sought to have Petitioner's base offense level increased two levels for obstruction of justice as a result of the Government's belief that Petitioner lied at his suppression hearing, Petitioner's counsel ultimately convinced the Court not to impose this enhancement. (Sent. Hearing Tr. 120.) In addition, the Court notes that any repercussions resulting from less than truthful testimony or statements by Petitioner at the suppression hearing or earlier would not constitute prejudice for ineffective assistance of counsel purposes.

Petitioner's claim of ineffective assistance based upon bad plea advice is denied.

## C. **Appellate Counsel**

Petitioner alleges that his appellate counsel was ineffective because he "failed to meet [Petitioner] and learn firsthand the factual underpinnings for what took place in the courtroom and in the course of the attorney client relationship . . . ." Petitioner also alleges that his appellate counsel failed to conduct a comprehensive transcript review.

Petitioner's allegations regarding his appellate counsel focus on his appellate counsel's alleged failure to realize the ineffective assistance of counsel received by

---

[22] It does not escape this Court's attention that on at least one prior occasion Petitioner admitted to lying in an affidavit. (5:05CR267: Doc. No. 154, 6-7.)

Petitioner at the district court level.[23]  Ineffective assistance of counsel claims, however, are most appropriately raised on collateral review.  See United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1998); United States v. King, 119 F.3d 290, 295 (4th Cir. 1997).  As Petitioner's claims of ineffective assistance of counsel were not conclusively established by the record, such claims likely would not have been recognized on appeal.[24]  As such, Petitioner's ineffective assistance of appellate counsel claim is denied.

### D.  Discovery Requests

Petitioner requests in his response to the Government's Motion for Summary

---

[23] Petitioner presents a convoluted argument that the Government incorrectly argued and the Fourth Circuit incorrectly held that the plain error in Petitioner's case did not affect a "substantial right." (Mot. to Vac. 25-28; Pet. Answ. Opp. Gov't Summ. J. Mot. 25-29.)  Petitioner misreads both the Government's argument and the Fourth Circuit's holding.  The Government admitted that the plain error affected a substantial right and the Fourth Circuit so held. United States v. Parks, 2004 WL 5245294 (4th Cir. 2004)(Appellee's Brief); United States v. Parks, 113 Fed. App'x 508, 509-10 (2004). Petitioner's appeal was denied because the Government argued and the Fourth Circuit agreed that the plain error which did affect a substantial right did not affect the "fairness, integrity, and public reputation of the judicial proceedings." Id.  This holding is in accordance with the case law that holds that reversal is not warranted under a plain error standard of review when a conviction based upon a drug amount not set forth in the Indictment was stipulated to or supported by an overwhelming amount of evidence. See, e.g., United States v. Cotton, 535 U.S. 625 (2002); United States v. Promise, 255 F.3d 150 (4th Cir. 2001).  Needless to say, appellate counsel was not ineffective for failing to argue that the plain error affected a substantial right – a point which was already conceded by the Government.

[24] Petitioner asserts that appellate counsel was ineffective for failing to assert that his trial counsel was ineffective for not understanding the mandatory minimum sentence Petitioner faced and that it had gone from twenty to thirty years.  (Mot. to Vac. 20.) Collateral review counsel incorrectly characterizes the mandatory minimum sentence faced by Petitioner.  Pursuant to the indictment, Petitioner faced a statutory range of zero to twenty years.  21 U.S.C. § 841(b)(1)(C).  When a drug amount of greater than 1.5 kilograms was attributed to Petitioner, he faced a statutory range of ten years to life absent the cap imposed by Apprendi.  21 U.S.C. § 841(b)(1)(A).

Judgment that if the Court is inclined to grant summary judgment, he would like to be able first to conduct additional discovery. (Pet. Answ. Opp. Gov't Mot. Summ. J. 3.) In addition, the Court notes that Petitioner has an earlier Motion for Discovery pending that asserts that while Petitioner's trial counsel purportedly sent the complete file to appellate counsel who then sent it to collateral review counsel, the documents relied upon by trial counsel to refresh his recollection of the events were not included in the file. Petitioner's trial counsel's affidavit indicates that he relied upon his time sheets and correspondence to refresh his recollection. It seems entirely reasonable to the Court that trial counsel would not include such documents, particularly time sheets, when forwarding a criminal file to appellate counsel.

In addition, Petitioner asserts that the alleged complete file did not contain a copy of the proffered plea agreement. (Mot. for Disc. 2, 5.) Collateral review counsel clearly possessed a copy of the document to which the proffered plea was attached as an exhibit as he cites to it in his filings. Moreover, a copy of the proffered plea agreement is found in the official criminal file. As such, in any event, both appellate and collateral counsel obviously had access to that document and all others in the official record.

Finally, Petitioner has not articulated the need for any document or deposition that would effect this Court's ruling. In sum, Petitioner's request for discovery is denied.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. The Motion to Intervene by Aaron Michel (Doc. No. 5) is **DENIED as moot**;

2. Petitioner's Motion for Discovery (Doc. No. 13) is **DENIED**;

3.  Petitioner's Motion for Summary Judgment (Doc. No. 19) is **GRANTED in part** and **DENIED in part**;

4.  Respondent's Motion for Summary Judgment (Doc. No. 9) is **GRANTED in part and DENIED in part**; and

5.  Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **GRANTED in part and DISMISSED in part**;

6.  Petitioner's criminal judgment is vacated due to his trial counsel's failure to object to the drug amount based upon the Supreme Court's holding in Apprendi v. New Jersey;

7.   The Clerk is directed to prepare a new amended criminal judgment sentencing Petitioner to his statutory maximum sentence of twenty years of imprisonment;

8. The change of sentence results in a change in allowable term of years on supervised release.  Petitioner's amended term of supervised release shall be three years;

9. Except as herein provided, all other terms and conditions of the original judgment shall remain the same; and

10. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as to the dismissed claims in Petitioner's Motion to Vacate as Petitioner has not made a substantial showing of a denial of a constitutional right with regard to these claims.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to

satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)(citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Signed: January 12, 2010

Richard L. Voorhees
United States District Judge